MANUFACTURERS NATIONAL BANK
Executor of the Will of Herbert F. Shaw
*vs.*
ADELBERT S. WOODWARD.

Androscoggin.    Opinion, September 13, 1941.

*Frank T. Powers,* for plaintiff.

*George C. & Donald W. Webber,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

MURCHIE, J.   In this case, reported to the court on bill, answer and replication (and a stipulation that the facts alleged in the pleadings, with a single exception not material to the issue, are true), the plaintiff, as executor under the will of Herbert F. Shaw, late of Mount Vernon, in the County of Kennebec, whose testamentary intent to make provision for a public library, to be maintained in said town, was expressed in his last will and testament in the words:

> "I give and bequeath to the Town of Mount Vernon, Maine, my house and lot, in Mount Vernon Village, for use as a public library, and whatever remains after other sums hereinafter to be named have been disposed of shall be kept as a permanent fund, the income of which shall be used in keeping the buildings in repair and purchasing

suitable books for the library. With the house I wish the Town to have every thing which the buildings contain, except a few articles which are kept for storage, and which belong to Annie W. Fellows. I would like for my safe to be always kept in the house. The combination of the lock is set at 77-88-28-97."

seeks specifically to determine whether the residuum of the estate in its hands as executor shall be paid to itself as trustee under said will or pass, as intestate property, to the defendant, who is sole heir-at-law of the testator. In general terms the prayer also is for construction and interpretation of the passage quoted.

The will bears date of September 7, 1938, and was probated July 26, 1939. Complainant is the executor and trustee named in the will and has qualified in both capacities. Defendant is named in the will as beneficiary in a life estate of $5,000. He is entitled by descent to any intestate property.

Following the qualification of the complainant as executor, notice of the provisions of the will was given to the municipal officers of the town aforesaid, and a town meeting was held, or a series of such meetings, as hereinafter noted, to vote upon accepting or rejecting the bounty intended for the town and its inhabitants under said will. The proper effect of the town action with reference to the trust, or trusts, intended to be established by the testator, can only be determined by giving consideration to the rights of the voters in connection therewith.

Statutory authority permitting municipalities to accept money or legacy in trust, and to assume responsibility in connection with the administration thereof, dates back to 1873— Chap. 92 of the Public Laws of that year. The authorization there granted covered donations or legacies for any benevolent, religious or educational purpose. It was later extended to cover also "the erection and maintenance of monuments . . . public cemeteries and lots therein"—P. L. 1883, Chap. 106. The purpose of the extension, and the necessity of enabling

legislation for any acceptance by towns of property in trust, are apparent on examination of the decision of this court in *Piper, et al.* v. *Moulton, Exr., et als.,* 72 Me., 155, decided March 10, 1881, where a bequest of $100 to the inhabitants of a town to hold the same in trust forever, to apply the income to keep the testator's lot in good order and condition, was held void as creating a perpetuity which was not for a charitable use.

A more restricted authority had earlier been given in connection with public libraries, P. L. 1854, Chap. 106. That act, as originally written, conferred power upon towns to receive, hold and manage "any devise, bequest or donation for the establishment, increase or maintenance of a public library." There was no requirement of acceptance, or other action, on the part of the electors of the town, unless such requirement is implicit in a provision that the gift be received "in its corporate capacity." In 1887 (Chap. 93 of the Public Laws of that year), a substantially identical provision was enacted applicable to art galleries (as well as to public libraries), except that the words "accept by vote of the people thereof" were used in place of the words "receive in its corporate capacity" and the subject matter was limited to "land or land and buildings thereon." Supplemental provision was made in this enactment for similar acceptance of books, charts or maps "and any funds, the income of which to be used to purchase books, maps or charts, and keep the same in order." In the statutory revisions since that date, the provisions of these two separate acts have been consolidated in a single section, which, in that part which traces back to the 1854 act, substitutes the words "any town, as such, may receive" for the original language of the 1854 act which read "any . . . town . . . may receive in its corporate capacity."

The supplemental provision as to the acceptance of books, etc. and *funds* was dropped in the 1903 revision of the statutes, although there seems to have been no legislative action in the interval which laid the foundation for such a change. The

wording of this law as it stood in the 1903 revision (Chap. 57, Sec. 19) is identical with that in the 1916 revision (Chap. 4, Sec. 83) and in the current revision (R. S. 1930, Chap. 4, Sec. 31), and must govern the interpretation of the will now under consideration unless, as the defendant claims, this *library* statute should be disregarded and the provisions of R. S. 1930, Chap. 5, Secs. 90 to 95 inclusive be held controlling. Notwithstanding the fact that the particular section appears identically phrased in the last three revisions of the statutes, it should perhaps be noted that Chap. 183, P. L. 1909, which appears to have been enacted to authorize, in like manner, the receipt or acceptance of gifts or trusts intended for the benefit of public parks and playgrounds, later made a separate section, as appears in R. S. (1916), Chap. 4, Sec. 85, re-enacted the library provisions in the exact language of the 1903 revision, and that when the library laws were consolidated in 1921 (Chap. 210 of the Public Laws of that year), the same exact language was used once more (Sec. 36 of said chapter).

The claim of the defendant can be most succinctly stated by the quotation of a paragraph from the written brief submitted:

"The Town of Mount Vernon has now by its vote unconditionally rejected and declined the gifts in the Shaw Will. It cannot be denied that the Town had a right to so decline. The Statute (see Section 92 of Chapter 5, Revised Statutes 1930) expressly recognizes the right of the Town to refuse and in fact makes its lawful consent a condition precedent to a good trust."

and a later summary of the same contention therein in the words:

"That the Town . . . *under the express terms of the Statute* [Italics ours] and the well established common law had a clear right to refuse the devise of the real estate and the benefits as well as the duties and obligations associated with the trust of the residuary funds."

These assertions dismiss without consideration plaintiff's claims, that proper construction of the will shows that the paragraph under consideration was intended to accomplish a dual purpose, first, to make, to the town, *as trustee,* a devise and bequest of a lot of land, with the buildings thereon and the contents thereof (so far as such contents were the property of the testator), and second, to bequeath to the plaintiff, *as trustee,* the entire residue of the estate; and that both trusts were designed to serve the common purpose of providing a public library in the town.

The provisions of R. S. (1930), Chap. 4, Sec. 31, carry ample authority to the town to receive, *in trust,* either the real or chattel property, disposed of by the words,

"I give and bequeath to the Town . . . my house and lot . . . for use as a public library"

and the later recital

"with the house I wish the Town to have every thing which the buildings contain,"

or both that property and the residue of the estate, the disposition of which must be determined by construction of the words,

"and whatever remains . . . shall be kept as a permanent fund, the income of which shall be used in keeping the buildings in repair and purchasing suitable books for the library"

and must be interpreted in the light of a later provision, specifically naming the plaintiff to administer the estate and trust,

"For Executor of my will and Trustee of the fund herein provided, I appoint the Manufacturers National Bank."

The principle of law that construction of a will is to be upon the entire instrument, which principle has been so often expounded, and is so well established, as not to require any cita-

tion of authority, requires that the language before us for consideration be interpreted as showing intent to create two separate trusts, with the town as trustee of one and the plaintiff herein as trustee of the other. The specific prayer of the bill must therefore be answered by decree that the executor pay the residue of the estate to itself as trustee.

We pass now to a consideration of the trust wherein the town was named as trustee. Here we have the issue as to whether or not a vote of rejection by the town, or a failure, or neglect, to vote either to receive, or to accept, the bounty, assuming such action or lack of action, would serve to defeat the testamentary intent and create intestacy as to the particular property involved. Defendant, as a supplemental basis for his claim to the property comprised in both trusts asserts that the refusal of the town to accept the devise of the homestead has "removed and excluded any possibility of the carrying out of the trust."

It might well be doubted, upon all the facts, whether the town has, in either law or fact, rejected the trust. The record discloses that, in the first instance, a special town meeting was convened on September 25, 1939, at which the electors voted acceptance of the provisions of the will (whatever was carried thereby) , and named a library committee. This meeting was recessed until the date of the following annual town meeting, to give opportunity for seeking construction of the will, to determine whether the limiting words as to the application of the trust income precluded payment therefrom of the expense of operation of the library. The plan was to adjourn the meeting without further action if such expense could be paid out of trust income (and let the acceptance stand as voted) ; otherwise, to reconsider the vote of acceptance and reject the trust. So far as the record discloses, the recessed meeting was never reconvened, nor was there either any article in the warrant for the annual meeting, or any action thereat, on the library question, although it may perhaps be said that intent to keep the question alive, and open, was evidenced by a vote to recess

that annual meeting to a fixed date. In the interval, the attempt of the town to secure construction of the will, as to the limitations on the use of income, failed and again, on the very day to which the recess had been taken, a new meeting was convened. Once again the voters assembled, not in adjourned or recessed meeting, but under a new warrant, and, in accordance with proper article therefor, they voted "to recind Art. 2 of Sept. 25, 1939 Meeting" (Article 2 of said meeting being the article under which the original vote of acceptance of the trust or trusts had been taken), and "to reject and decline Dr. Shaw will."

In this confusing scramble of municipal action it would be difficult, if it were material to the result, to determine the proper consolidated effect of the conflicting votes passed at separate and distinct meetings. If the first special meeting had been reconvened, on the adjourned date, readjourned, at that time, and again reconvened, on the date when the final vote was taken, it would undoubtedly be necessary to adjudicate the question as to whether rejection of the trust wherein the town was named as trustee would create intestacy as to *that trust property*. Such, however, is not in accordance with the record. The most striking feature of the entire case, manifest on a consideration of all the circumstances, lies in the obvious fact that, after three town meetings and a considerable amount of negotiation between the defendant and representatives of the town, the electors have never passed upon the issue of a choice between having the library provided for them under the Shaw will and having no library at all. The vote of rejection was induced by negotiations of the defendant which were not designed to cause the voters to decline to have *a* public library in the Dr. Shaw home, but rather to convince them that, by means of a negotiated intestacy which would pass all the property intended for both trusts to the defendant as heir-at-law, they might, through him, secure another and a different library, at the same location, with additional benefits in another regard. Incidentally the inheritance of the defendant

would have been quite considerably increased by comparison with that life estate in $5,000 which he would have taken under the terms of the will. If, in the parliamentary tangle in which the inhabitants of the town wound themselves while seeking to improve on their prospective bounty, there was any effective declination or rejection of anything, it can be considered, at the most, as a mere declination to hold the real and personal property trust as trustee. Should we assume that result to have been accomplished, the effect of such action upon the trust itself would have to be decided.

The policy of the law has long been liberal in sustaining trusts designed to carry into effect any public or charitable purpose. The tendency to liberality has been manifest not only in the legislative branch of the government, as evidenced by the series of enactments already referred to, but also on the part of the courts. The rule has long been established that no trust or bequest shall be permitted to fail for want of a trustee, and this principle is applicable not only to charitable trusts but to any which are sought to be established for a proper purpose. *Tappan, et als.* v. *Deblois, Adm.*, 45 Me., 122; *Preachers' Aid Society* v. *Rich, Exr.*, 45 Me., 552; *Swasey, Admr.* v. *The American Bible Society, et als.*, 57 Me., 523; *Childs, et als.* v. *Waite, Admr., et als.*, 102 Me., 451, 67 A., 311. Assuming for a moment that the action of the Town of Mount Vernon as heretofore taken at the meetings which have been held, or as it may hereafter be taken at a meeting to be convened to determine whether the voters will elect to "receive" the bequest of Dr. Shaw and hold the real and personal property demised to them in trust for the establishment of a public library, represents a refusal to act as trustee, equity, in accordance with the principle stated, will name a trustee to act in its stead, that the trusts intended to be established by this testator shall be carried into effect according to their terms.

Further consideration of the meaning and effect of the first paragraph of the instant will is not strictly necessary until the plaintiff herein, as trustee of the residuary estate, and the

town, or some substitute or successor, as trustee of the particular property constituting the separate trust, have had an opportunity to work out a plan, within such limitations as the restrictive words of the will impose, to accomplish properly the plain purpose of the testator. As was said by Mr. Justice Cornish (later Chief Justice of this court) in *The Webber Hospital Association, et als.* v. *McKenzie, Exrx. and Tr.*, 104 Me., 320 at 325, 71 A., 1032 at 1034:

"A purpose so benevolent and an intention so clear ought to be upheld by this court unless prevented by positive and firmly established rules of law."

In that a case a fund, the amount of which is not disclosed in the opinion, was left in trust, no trustee being named, to be held until, with its accumulations, it amounted to $75,000, when the income was to be applied to the maintenance of a free hospital, and a stated part of the principal ($25,000) used, if necessary, for the construction thereof.

The necessity for the bringing of the present bill having originated in inducements offered to the Town of Mount Vernon by the defendant, to bring about an intestacy which would pass property to him by operation of law, and been definitely forced by him, through written demand for present payment to him of the residuary estate, there would seem to be no sound reason why his "costs" should be paid out of the estate.

The bill should be allowed, with costs, and the plaintiff instructed to proceed to close the administration of the estate in accordance with the construction of the will above outlined, any expense of the proceedings to the executor, not recoverable as costs from the defendant, including reasonable counsel fees, to be paid out of the principal of the residuary trust. The case is remanded for decree in accordance with this opinion, wherein costs and counsel fees shall be determined.

*Decree accordingly.*