**Walter E. FARRAND, Administrator of the Estate of Olive Wood Farrand**

v.

**REDINGTON MEMORIAL HOME.**

Supreme Judicial Court of Maine.

Nov. 18, 1970.

**872**

Carl R. Wright, James MacMichael, Skowhegan, for plaintiff.

Lester T. Jolovitz, Waterville, for defendant.

Before DUFRESNE, C. J., and WEBBER, MARDEN, WEATHERBEE and POMEROY, JJ.

WEATHERBEE, Justice.

The Defendant is a charitable corporation the purposes of which are to provide a home for elderly women. It maintains such a home in Skowhegan and on August 30, 1965 Olive Wood Farrand, a 90 year old widow, entered this institution after paying an entrance fee of $2,000 and after turning over to the Home her savings deposits totaling $8,894.60 and some furniture. Mrs. Farrand had executed an application for admission a year before and two days before entering the Home she and the Corporation Treasurer executed an agreement on a printed form which had been prepared for the Home's use by its attorney and which had been used by the Home for several years. The agreement reads:

"THIS AGREEMENT made and entered into this ——— day of August, A. D.1968 by and between REDINGTON MEMORIAL HOME, a corporation organized under the laws of the State of Maine and located at Skowhegan in the County of Somerset and State of Maine, party of the first part and OLIVE FARRAND of Skowhegan party of the second part, WITNESSETH:

Said party of the second part has entered the Redington Memorial Home and paid the entrance fee of Two Thousand ($2,000.00) Dollars and turned over the balance of her assets to the Treasurer of said Redington Memorial Home, as follows, receipt of which is hereby acknowledged:

Mrs. Farrand to have $35.00 per month from her Social Security. It is hereby agreed that said party of the second part is admitted to the Home on probation for a term of six months, after which if she wishes to remain permanently, the Trustees will vote to accept or dismiss her. If she withdraws or is dismissed, after deducting not more than Twenty-five ($25.00) Dollars per week, unless otherwise agreed, as compensation for board and care for the time she remains in the Home, she will be refunded the balance of all property turned over to the Home, including the Social Security which she has paid to the party of the first part.

It is also hereby mutually agreed that the Trustees of said Redington Memorial Home are to have the right to invest and reinvest all of the amount paid by the

party of the second part above the entrance fee of Two Thousand ($2,000.00) Dollars, but to invest the same only in such securities as are legal for Maine savings banks, and said party of the first part is to have all income from said invested funds; and provided said party of the second part is still residing at the Redington Memorial Home, at her decease, the expenses of her last sickness and funeral expenses shall be paid by said party of the first part, and all other assets turned over to said party of the first part shall become the property of said party of the first part."

Mrs. Farrand died in a local hospital only 35 days after entering the home. At her death, Defendant claimed ownership of the assets turned over by her at the time she entered the Home and also a small amount represented by checks and cash which were in her possession at her decease. This action by Mrs. Farrand's Administrator presents the issue of title to these sums and this furniture now in Defendant's possession. A Single Justice of the Superior Court gave judgment for the Plaintiff and the matter comes to us on Defendant's appeal.

The question we are called upon to decide is whether Mrs. Farrand's death, occurring as it did during the six months' probation period, gave the Home title to her money and property. The answer must be found in construction of the agreement and particularly of the last five lines.

"and provided said party of the second part is still residing at the Redington Memorial Home, at her decease, the expenses of her last sickness and funeral expenses shall be paid by said party of the first part, and all other assets turned over to said party of the first part shall become the property of said party of the first part."

We seek to learn the intention of the parties from the language of the whole agreement interpreted with reference to the situation of the parties at the time the contract was made. Any ambiguity of expression must be construed more strongly against the one who prepared the agreement. If a contract is susceptible of more than one construction the more natural, probable and reasonable construction should be adopted. Monk v. Morton, 139 Me. 291, 30 A.2d 17 (1943).

Agreements under which elderly people agree to convey their property to such institutions as this, in consideration of the corporation's promise to furnish the applicants a home and care for the remainder of their lives, have been found to be valid by many courts. Many of these agreements have provided for a probation period during which or at the end of which the applicant and the home may each terminate the agreement at will. Many of them provide, as our agreement does, for a return of the applicant's assets less a stated compensation for board and care at the end of the probation period in the event the applicant does not choose to remain longer or the home does not choose to have her do so.

In several cases the courts have been faced with the issue presented to us when the applicant has died during the probation period. In nearly all of these cases in which the agreements contained no specific provision for this contingency, the courts have held that the decedent's personal representative is entitled to the return of the decedent's assets. The reasoning of these courts has generally been that the agreement is divisible—one part *in praesenti* for temporary support during the probation period, and the other part a contract *in futuro* for permanent support which comes into existence only after the fulfillment of the conditions precedent that the applicant chooses to remain and the home chooses to have her. They hold that the condition upon which the transfer of the property and the home's unequivocal obligation of support were intended to become absolute never occurred. Smith, Adm'r v. The Eliza Jennings Home, 176 Ohio St. 351, 199 N.E.2d 733 (1964); First

National Bank of Lawrence v. Methodist Home, 181 Kan. 100, 309 P.2d 389 (1957); Brydges v. Home for the Aged, 373 Mich. 408, 129 N.W.2d 869 (1964); Lyon v. Willamette Lutheran Homes, Inc., 240 Or. 56, 399 P.2d 895 (1965); 10 A.L.R.2d 864, 874.

The New Hampshire Court, on the other hand, reasoned that the conditions of admission applied to probationers as well as to permanent members and that title to the applicant's property passed to the home upon execution of the agreement subject to the condition of dissatisfaction of either party during the probation period. Dodge v. New Hampshire Centennial Home for the Aged, 95 N.H. 472, 67 A.2d 10 (1949).

Our problem cannot be solved by a mere choice of one of these two opposite theories of contract construction. The last five lines here are unique and it is argued by the Defendant that the contingencies for which they were intended included the very one we are now considering. It is necessary to examine carefully the language used in the entire contract in order to ascertain if this was their purpose.

The applicant is stated to have "entered" the Home and to have "paid" an "entrance" fee. She "turned over the balance of her assets" to the Home. She was admitted "on probation" for a term of six months. The agreement states that she may at that time "withdraw" or be "dismissed". The Trustees may at that time decide to "accept" or "dismiss" her if she wishes to remain "permanently".

Like most of these contracts, the present one states the procedure to be followed in the event the applicant withdraws or is dismissed at the end of the six months' probation period—the Home may deduct $25.-00 per week as compensation for the period she was in the Home and then must "refund" to her the "balance" of all property "turned over" by her.

We note that the property "turned over" by her was earlier stated to be the "balance of her assets" after payment of her entrance fee of $2,000 which was taken from one of her savings accounts. The contract makes no reference to any refunding of this entrance fee and suggests that the entrance fee remains the property of the Home in any event.

The next paragraph reinforces this impression. It provides that the Home may invest and have the income from the money "paid" by her "above the entrance fee" of $2,000.

We feel that at this point in the reading of the contract the applicant might reasonably conclude that the entrance fee, again having been distinguished in its treatment from the balance of her assets, was to remain the property of the Home in any event.

Present in the consideration of these cases is the realization that one construction of the contract may result in a home getting a windfall from the assets of a probationer who dies a few days after entering the home. On the other hand the grim fact is that an applicant who dies during the probation period leaves burial expenses and it is obvious that $25.00 per week would not compensate the home for board plus the certain expenses of burial. There may also be hospital expenses chargeable to the home. It seems unlikely that the home would not intend to protect itself against such a contingency. At this point it might appear to an applicant that the home was protecting itself somewhat against such a contingency by retaining title to the entrance fee. Otherwise, what purpose would the entrance fee serve?

Against this background of consideration of the language of the agreement the reader arrives at the last five lines which state that if the applicant is "still residing" at the Home at her decease the Home shall pay her expenses and keep all other assets which were "turned over" to it.

Noticeably absent is any explanation whether the provision is intended to include

a decease occurring within the probation period. The word "reside", as ordinarily used, connotes more than a transient location. Webster's International Dictionary, Second Edition, defines "reside" as

"1. To settle oneself * * * in a place; to be stationed; to remain or stay * * *

2. To dwell permanently or continuously; to have a settled abode for a time; to have one's residence or domicile; specif., to be in residence, * * *"

While this definition does not exclude the use of the word to describe a stay for a six months' period, the choice of word together with the language suggesting that the large entrance fee was not to be returned to the applicant renders the last five lines at least ambiguous. This contract was made by Defendant from a form drawn several years ago by Defendant's then counsel. The applicant, a woman of 90 years, was not represented by counsel at the time the agreement was executed. The case is appropriate for the use of the rule of construction that the language should be interpreted more strongly against the party who chose the language.

■ Considering the instrument as a whole and applying this rule of construction we conclude that the last five lines were intended to apply only to deaths of persons who at the end of the probation period had chosen to remain and had been accepted as permanent members.

The contract as a whole, then, contains no specific provision for the present contingency. We find nothing in the surrounding circumstances which removes the uncertainty. The bylaws of the corporation are in evidence. They cannot enlarge Mrs. Farrand's obligations or limit her rights or bear on her intentions as she is not shown to have had knowledge of them. They do not help us to understand Defendant's intentions because they contain no specific reference to this situation and their frequent use of the words "member", "permanent member", "resident" and "permanent resident" appears to make no clear distinction as to respective status.

The language remains ambiguous. Defendant, having prepared the instrument, could easily have made the purpose clear. We adopt the majority rule as stated in *Smith, Adm'r.* and find that the conditions not having occurred which would have made the transfer of her property to the Home and the Home's obligation to support her unequivocal the Plaintiff is entitled to the return of her assets.

We construe the agreement as though the proviso read:

"And provided said party * * * having at the conclusion of the probation period been accepted as permanent resident is still residing at the * * * Home at her decease * * *"

Therefore, we conclude that the language of the entire instrument reflects the parties' *intention* that at an applicant's death during the probation period the Home must return her other assets but may retain the $2,000 entrance fee.

■ However, the Home's *authority* to contract is limited by its bylaws. While they make no specific reference to the death of a probationer, sec. 19 reads:

"Persons not confirmed as permanent residents shall be refunded the balance of their admission fee paid by them after deducting therefrom a reasonable amount for the time they have remained in the Home, as a compensation for their board and care as the Board of Trustees may determine."

Defendant then, may take from the entrance fee only the amount required to compensate the Home for her maintenance. The Presiding Justice found this to be $125.00 for board and room plus $1,023.55 for expenditures itemized in the agreed statement of facts. The Plaintiff agrees that the burial expenses are properly included in this figure. The cash assets re-

ceived total $11,183.54. Deducting the expenses from the assets leaves a balance due Plaintiff of $10,034.99 plus interest from November 27, 1968 (when demand for payment was refused) to January 22, 1970 of $692.41 or a total of $10,727.40 as found by the Justice.

Appeal denied.

Remanded to the Superior Court for computation of interest from January 22, 1970 to date of this opinion which is to be added to the judgment.