[Civ. No. 7170.   Fourth Dist.   Mar. 5, 1964.]

JANET CALDWELL, as Executrix, etc., Plaintiff and Respondent, v. BASLER, INC., Defendant and Appellant.

Dungan & Tobias, Roy E. June and George H. Tobias for Defendant and Appellant.

H. E. Lindersmith and K. E. Nungesser for Plaintiff and Respondent.

BROWN (Gerald), J.—Janet Caldwell, as executrix of the Estate of Editha P. Pierce, deceased, brought suit against Basler, Inc., doing business as Basler Home, for the sum of $11,672.55. Judgment favored the plaintiff and defendant has appealed.

The facts are not in controversy. Mrs. Pierce entered Basler Home November 12, 1958, as a month-to-month resident. Beginning in January 1959, and assisted by her financial advisor, Mrs. Pierce negotiated with Basler Home for a life care contract. On April 4, 1959, a life care contract was executed by the parties. At that time Mrs. Pierce was 85 years of age, had a life expectancy of 7.11 years, was in fair health, ambulatory, and neither deranged in mind nor afflicted

with disease. The contract provided that she pay $15,525 for life care, $12,000 cash and the remaining $3,525 to be payable from her estate on her death.

Basler Home was licensed by the Department of Social Welfare of the State of California to enter into life care contracts, the form of its basic life care contract had been approved by the department, and in particular, the contract with Mrs. Pierce had been approved. It provided in substance for life care of Mrs. Pierce; ordinary nursing without extra cost; from the sum paid by Mrs. Pierce, the home was required to maintain a reserve fund in an amount required by law and the department for the protection of Mrs. Pierce; should any reserve funds remain on her death they must be retained by the home in the general life care contract fund for the use of other life members; the home could dismiss Mrs. Pierce for cause, upon 30 days' notice; and either party could terminate the agreement within 90 days of admission, in which case Mrs. Pierce would be refunded the amount she paid less the cost of her care to that time.

Mrs. Pierce died May 19, 1959. At that time neither party had terminated the agreement. The home thereupon transferred the unused funds in Mrs. Pierce's account to the general life care fund for the care of the other life care residents. No claim was made by the home against the estate for the balance due under the contract. On June 20, 1959, the home received a notice from plaintiff, in her capacity as special administratrix of Mrs. Pierce's estate, purporting to terminate the contract and demanding a refund of the amount paid less charges for care to the time of death. The sum of $11,672.55 was stipulated as the amount due in the event plaintiff prevailed.

The plaintiff concedes there is no question about the validity of the contract. There is no claim of overreaching. It was stipulated by the parties at the trial that Mrs. Pierce became a life care contract resident the day the contract was executed.

In this case not only was the contract executed but there was performance of all contractual requirements except the balance due the home from Mrs. Pierce's estate, and as to this the home, in effect, has waived any claim. Mrs. Pierce was a life care contract resident at the home. No further act or election by her was necessary to remain in the home. The home provided her life care under the contract until her death. She received precisely that for which she contracted— care for life. Complete performance took place. After Mrs.

Pierce's death no rights respecting the contract remained in her estate to be exercised by plaintiff.

The plaintiff, however, contends that Mrs. Pierce never attained life membership in the home by reason of her death during the 90-day "probationary membership" period; and cites, inasmuch as both parties concede there is no California case law on the exact question, *First National Bank* v. *Methodist Home for Aged*, 181 Kan. 100 [309 P.2d 389], as being precisely in point. In that case it was clearly understood that the applicant, Mrs. Ellsworth, was received into the home as a trial member for a probationary period of two months with the right of either party to determine whether she was to continue in the home at the end of such period as a lifetime member. The contract provided for a gift of $10,000 by Mrs. Ellsworth, without reservation, to the home to be used and disposed of in its benevolence and charitable work as it might deem best. Mrs. Ellsworth died a month after executing the contract without an election having been made as to whether she was to leave the home or remain therein after the probationary period. The court held the sole question was one of law interpreting the contract, and that under its terms Mrs. Ellsworth never became a life member of the home. Until she acquired life membership status, she or her estate was entitled to a return of the gift less charges for a month's care. The facts of that action clearly distinguish it from the case at hand. Mrs. Ellsworth was a probationary member; it was necessary for her to elect to become a life member. Mrs. Pierce, on the other hand, was a life care member from the inception of the contract, with no further act required on her part to retain such status. Basler Home is licensed by state authority; its life care contract form, including Mrs. Pierce's contract, was approved by such authority; in order to give financial stability to the home, the consideration paid by Mrs. Pierce (not a gift) was required to be placed in part in a reserve fund for Mrs. Pierce's benefit and protection and could not be used, without reservation, for any benevolence or charitable work deemed best by the home; the remainder of the funds at her death was earmarked for the specific purpose of caring for other life members.

At the time the contract was made by Mrs. Pierce and the home an element of risk or chance was present as to the length of time Mrs. Pierce might live. (*Gold* v. *Salem Lutheran Home Assn.*, 53 Cal.2d 289, 291 [1 Cal.Rptr. 343,

347 P.2d 687].) Actuarially this was figured at 7.11 years and the sum she was to pay the home was based on that figure. Had she lived longer than her life expectancy the life care contract fund provided by others who had lived shorter than their life expectancies would have been available to sustain her throughout the balance of her life.

It was reasonable for the contract to provide that had Mrs. Pierce herself elected within the 90-day period to withdraw from the home, the fund which she paid would be available for her continued existence; also that on her death the balance thereof would be available for others in the life care contract fund. (See *Dodge* v. *New Hampshire Centennial Home for Aged*, 95 N.H. 472 [67 A.2d 10, 13, 10 A.L.R.2d 858, 862-863].)

Judgment reversed.

Griffin, P. J., and Coughlin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 29, 1964.