BRYDGES v. HOME FOR THE AGED.

1. Contracts—Care and Keep—Transfer of Property—Home for the Aged.

Contract between 85-year-old widow who had entered defendant home for the aged 18 days before her death and at time of entry had transferred to it all of her personal and real property, which contained a provision that the resident should serve a 3-months' probationary period before becoming a permanent resident of the home, clearly showed that the total commitment which she had sought was not, at best, to be entered into until the end of the probationary period, the bylaws requiring a formal motion of acceptance by the board of trustees at the end of 3 months.

2. Same—Construction—Persons Under a Disability.

The law has a tender regard for the aged or infirm who may be under a disability when they enter into a contract.

3. Same—Construction—Home for the Aged.

The protection of an aged person outweighs other considerations in construing such person's contract for care and keep which had been entered into with a home for the aged.

4. Evidence—Contracts—Home for Aged.

Letter, identified as being in the handwriting of 85-year-old woman, now deceased, and presented to show her understanding of contract between herself and home for the aged, was prop-

---

References for Points in Headnotes

[1-4] 12 Am Jur, Contracts §§ 12, 13, 259.
  Obligations as between applicant for admission to charitable home, and home, respecting compensation to home, and property rights of applicant.  10 ALR2d 864.
[5] 12 Am Jur, Contracts §§ 13, 114.

erly received in suit by administrator of her estate to set aside contract and conveyances.

5. CONTRACTS—CONSTRUCTION—HOME FOR THE AGED—PROBATIONARY PERIOD—MUTUALITY OF UNDERTAKING.

Contract between 85-year-old widow and defendant home for the aged, which contained a provision that she should serve a 3-months' probationary period before becoming a permanent resident of the home was completely provisional during 18-day period which followed her entry into the home before her death and failed because of a change of circumstances not provided for nor contemplated, hence the special administrator of her estate was entitled to a return of her estate, all of which had been conveyed to defendant when she had entered the home, there being no mutual undertaking by the parties.

Appeal from Saginaw; Huff (Eugene Snow), J. Submitted June 2, 1964. (Calendar No. 8, Docket No. 50,221.) Decided September 2, 1964.

Bill by William J. Brydges, special administrator of the estate of Maude J. Daily, deceased, against the Home for the Aged, a Michigan nonprofit corporation, to set aside contract for care and support and conveyances of real and personal property made in accordance therewith. Various organizations, beneficiaries under proposed will of deceased, intervened as parties plaintiff. Decree for plaintiff. Defendant appeals. Affirmed.

*Weadock & Montgomery (Jerome Weadock* and *John D. MacKenzie,* of counsel), for plaintiff.

*Harvey D. Walker* and *Albert A. Smith,* for plaintiff intervenors the First Congregational Church of Saginaw and the Congregational Board of Ministerial Relief.

*Gilbert & Gilbert (Donald Gilbert,* of counsel), for plaintiff intervenor Roscoe B. Jackson Memorial Laboratory.

*Lorne S. MacDonald* and *James M. Smith* for plaintiff intervenor Michigan Heart Association.

*Nash, Nash & Borrello (Leopold P. Borrello,* of counsel), for defendant.

ADAMS, J. Maude J. Daily, a widow 85 years of age, lived alone in her own home. In December of 1960 she inquired about the Home for the Aged, a nonprofit organization incorporated for the purpose of providing care and support for elderly men and women. In January, 1961, she was taken on a tour of the home and was pleased with what she observed.

Following the tour, in the presence of a friend, William J. Brydges, Mrs. Daily discussed admission with the chairman of the admittance committee. She was given an application blank which she filled out and signed. One paragraph read:

"Do you understand that before admission as a permanent member of the home you will be received for a probationary period of 3 months, and *if at the end of said period you are not received as a permanent member,* or you decide not to continue at the home, the admission fee paid by you together with all property previously assigned to the home will be returned to you after deducting $........ per week for board during the time you have resided at the home, together with any other actual disbursements for your benefits?—Yes." (Emphasis supplied.)

By her will, Mrs. Daily had planned certain legacies. With the knowledge of the home's representatives she proceeded to make some of these gifts before she entered the home, giving William J. Brydges $1,000, Mildred Mae Schmitt $1,000, the First Congregational Church of Saginaw $200, and the Saginaw Humane Society $100. Thereafter, on February 2, 1961, she, accompanied by Mr. Brydges, went to the office of an attorney and board member for the home, where she signed the contract involved

in this lawsuit. She transferred all of her cash, savings, stocks, insurance and real estate to the home, to a total value of $52,237.52.

On February 8, 1961, Mrs. Daily entered the home. Eighteen days later she was dead. This suit was brought to recover her estate. The special administrator contends that the contract between Mrs. Daily and the home was provisional and that during the 3-months' probationary period the contract did not become finalized. The home's position is that, once signed, the contract became completely executed, subject to revocation within 3 months, and that the home is entitled to retain Mrs. Daily's estate.

Counsel have cited 2 conflicting lines of authority. Plaintiff supports his position by *First National Bank of Lawrence* v. *Methodist Home for the Aged,* 181 Kan 100 (309 P2d 389). Defendant contends that the proper rule of law is set forth in *Dodge* v. *New Hampshire Centennial Home for the Aged,* 95 NH 472 (67 A2d 10, 10 ALR2d 858).

In the New Hampshire Case, the home was allowed to retain the estate of a Miss Johnson. The Court construed the contract to mean that admission was accomplished upon the first entry to the home even though it was only on probation. The Court said (p 477):

"The same weighty reasons do not exist for implying either in fact or quasi-contractually an agreement to return the property in case of the inmate's death as in the event of her withdrawal from the institution. In the latter situation the inmate requires her property for the necessities of her continued existence. In the former, the issue is between the charitable institution and the estate of the former inmate, between one who would use the property for caring for others situated as Miss Johnson was or worse off financially and a legatee

or legatees whose only interest, so far as the record shows, is to receive their gifts."

In the Kansas Case, the court, after a careful analysis of the contract terms, concluded that death made it impossible for the decedent to determine whether she would become a permanent member of the home and that her administrator was entitled to recover her estate.

In the present case, the contract (reprinted in part in the margin)* contains 1 paragraph which is decisive. It is the provision that the resident shall serve a 3-months' probationary period *before becoming a permanent resident of the home.* Leaving out of account the right retained by the home to terminate the agreement at its option *at any time,* we think it clear that the *total commitment* which Mrs. Daily had sought was not, at best, to be en-

---

* "In consideration of the payment by the resident of the home of an admission fee * * * and in further consideration of the resident's agreements contained herein and in the application, assignments and transfers contained herein, and/or in the attached rider, *the home, except as hereinafter set forth, hereby agrees to care for and support the resident in the home in accordance with this contract and in the manner established by bylaws and standing rules of the home or any amendments, substitutions or additions thereto;* * * *

"The resident also hereby conveys, assigns and transfers to the home, all the property, both real, personal and mixed, which the resident now owns or may hereafter acquire * * *

*"The parties agree that the resident shall serve 3 months probationary period before becoming a permanent resident of the home.* If during such probationary period, the resident decides not to become a permanent resident of said home or if the board of trustees of the home notifies the resident that he or she will not be received as a permanent resident of said home, the admission fee and any property turned over by the resident to the home shall be returned after deducting the weekly charge set by said board of trustees for the period during which the resident shall have resided at said home, together with any other expenses incurred on the resident's behalf. *The resident hereby reaffirms, adopts and incorporates by reference the application previously executed and further agrees to observe and obey all of the bylaws,* rules and regulations heretofore *or hereafter* adopted by the home.

"In case of any misrepresentation of facts or breach of this agreement or violation of the home's bylaws, rules or regulations on the part of the resident or *whenever a majority of the board of trustees of the home shall deem it expedient for the benefit of the*

tered into until the end of a 3-months' probationary period. This is evidenced by the language of the contract and the provisions of the bylaws which required a formal motion of acceptance by the board of the home at the end of 3 months. Had Mrs. Daily tried to compel performance by the home during the first 3 months, it is obvious that under this contract she could not have done so.

While Mrs. Daily was fully advised at all times with regard to the proposed transaction and had the benefit of Mr. Brydges' advice, it should also be borne in mind that the law has a tender regard for certain persons—infants, the insane, the mentally incompetent, the aged or infirm, or any others who may be under a disability. Mrs. Daily, at age 85, undertook to contract with the home. There was no discussion of the contract—no offer, no counter offer, no adjustment of terms. The contract was prepared by the home. Mrs. Daily's choice was to accept it or not. Her understanding of the contract was clearly evidenced in a letter she wrote:

"Well I have made the change & hope it is the right one—I will be on probation for 3 mth then can deside."

The letter was identified as being in the handwriting of Mrs. Daily, and properly received by the trial judge. *Champion* v. *Champion,* 368 Mich. 84.

Suitable homes for the aged, such as the home in this case, are often nonprofit institutions conducted with the highest of motives and out of a deep concern for the welfare of the elderly. Admittedly, the cost of operation is a difficult problem. However, the

---

*home, the home may, at its option, terminate this agreement and be released from all further obligations by restoring to the resident the money and property received, or in lieu of said property, the value thereof as of this date less the weekly charge set by the board of trustees for the home as compensation for the resident's board and lodging* during his or her residence in the home." (Emphasis supplied.)

protection of an aged person must outweigh other considerations.

While it seems, from the gifts she made prior to turning over her property to the home, that Mrs. Daily contemplated a permanent and total arrangement for the remainder of her life, what she may have wished is not controlling in the construction of this contract. What is controlling is the fact that there was no mutual undertaking by the parties. The contract was completely provisional. It failed because of a change of circumstances which was not provided for nor contemplated. *In re Roy's Estate,* 278 Mich 6.

The trial court did not err in entering judgment for the plaintiff. That judgment is affirmed, with costs to the appellees.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, SMITH, and O'HARA, JJ., concurred.