[Civ. No. 29427.   Second Dist., Div. Four.   Apr. 11, 1967.]

BESSIE NEELLY WRIGHT et al., Plaintiffs, Cross-defendants and Appellants, v. COBERLY-WEST COMPANY, Defendant, Cross-complainant and Respondent.

Wright, Wright, Goldwater & Mack, Richard M. Goldwater and John H. Rice for Plaintiffs, Cross-defendants and Appellants.

Hackett & Hubbard and Ralph B. Hubbard for Defendant, Cross-complainant and Respondent.

JEFFERSON, J.—This appeal presents the issue of the proper construction to be given to the rental provisions of a lease. Plaintiffs, the lessors under the lease, filed a complaint against defendant, the lessee, seeking additional rent they asserted was due. Defendant answered, and brought a cross-complaint for declaratory relief asking that the court declare no additional rent was due. Each side then moved for a summary judgment on its pleading and to dismiss (or strike) the other's complaint (or cross-complaint). It was stipulated that "no triable issue of fact is raised either by the pleadings or by the affidavits" and "that a summary judgment may be granted by the court." The court heard the motions and ruled in defendant's favor, granting its motion for summary judgment on the cross-complaint for declaratory relief, and denying plaintiffs' motions for summary judgment and to strike defendant's cross-complaint. Plaintiffs filed a notice of appeal from the judgment entered.

The lease in question is a written agricultural lease with a 10-year term beginning January 1, 1959, and ending December 31, 1968. The dispute centers around the following provisions: "The Lessee shall pay to the Lessors as rent for the use and occupancy of said premises thirty dollars ($30.00) per acre per year for the first five (5) years of the lease, and thirty-five dollars ($35.00) per acre per year for the remaining five (5) years of the lease, or twenty per cent (20%) crop rent each year, as the term is used in the immediate vicinity, whichever is greater. The cash rent shall be payable as follows:

"On January 1st, 1959, $4,620.00
"On January 1st, 1960, $4,620.00
"On January 1st, 1961, $4,620.00
"On January 1st, 1962, $4,620.00
"On January 1st, 1963, $4,620.00
"On January 1st, 1964, $5,390.00
"On January 1st, 1965, $5,390.00
"On January 1st, 1966, $5,390.00
"On January 1st, 1967, $5,390.00
"On January 1st, 1968, $5,390.00

"In addition thereto, Lessee agrees to drill a well, to not less than 1200 feet, install the necessary pumping equipment with not less than a 150 horsepower motor.

"In calculating the crop rent, the cost of the well and necessary pumping equipment will be prorated over the ten-year period and deducted from the gross amount of crop.

"If, at the termination of the lease, the well and pumping equipment have not been fully amortized, the Lessors will pay the Lessee the difference of the cost less amortization.

"Lessee agrees annually, and not later than December 15th of each year, to furnish the Lessors, c/o Loyd Wright, 111 West Seventh Street, Los Angeles 14, California, or such other address as he may from time to time indicate, a certified statement of the gross amount of crops harvested from said land, less the ten percent (10%) amortization [sic] of the well and necessary pumping equipment, accompanied with a check for such additional sums as may be due, if any."

The last paragraph above was attached as a rider to the lease. It was prepared by plaintiffs. The rest of the lease was prepared by defendant.

In compliance with the terms of the lease, defendant drilled the well and installed the necessary pumping equipment. The well was completed on April 1, 1960. It cost defendant $27,873.65.

Defendant paid the minimum annual "cash rent" provided in the lease on the 1st of each year from January 1959 through January 1964.

The "gross amount of crops" harvested from the property for the years 1961, 1962 and 1963 was as follows:

| Year | Gross amount of crop |
|------|----------------------|
| 1961 | $37,776.88 |
| 1962 | 33,920.70 |
| 1963 | 39,251.88 |

Plaintiffs claim that under the terms of the lease "crop rent" was due for the above three years. Defendant denies this.

The dispute is centered on the question of when and how much of the cost of the well defendant was entitled to take as a credit in calculating "crop rent."

Plaintiffs contended in the court below that the lease contains no ambiguity to be explained by extrinsic evidence; the rental provisions expressly state that each year the lessee

(defendant) is to pay a fixed cash rent, or a 20 percent crop rent, whichever is greater; that in calculating the crop rent, the cost of the well is to be prorated over the 10-year period of the lease and 10 percent of the cost deducted each year "from the gross amount of crop." Stated another way, that in computing the crop rent for each year, one-tenth of the cost ($27,873.65) of the well, or $2,787.37, shall first be deducted from the total dollar amount of the crops harvested for the years 1961, 1962 and 1963, and from this balance, the 20 percent crop rent should then be computed. Using this formula, plaintiffs sought judgment for an aggregate of $6,657.47 in crop rentals for the years 1961 through 1963.

Defendant on the other hand contended that, for each year of the 10-year lease term, it is entitled to have credited to it one-tenth of the cost of the well, or $2,787.37 per year, against any crop rent payable for that particular year; as to any year when such cost is not credited, the uncredited amount should be carried forward on a cumulative basis for credit against crop rent payable in future years; that at the end of the lease term defendant is entitled to full reimbursement for the cost of the well less any amounts credited against crop rent. In computing the 20 percent crop rent each year under defendant's theory, 20 percent should first be taken of the total dollar amount of the crops harvested for the particular year, and $2,787.37 (one-tenth of the cost of the well) should then be deducted.

Defendant further argued that the disputed provisions of the lease are in fact ambiguous or uncertain; therefore, the court was entitled to look to the conduct of the parties to arrive at their true intention. Cited is *Bohman* v. *Berg,* 54 Cal.2d 787, 795 [8 Cal.Rptr. 441, 356 P.2d 185]. In this regard the court's attention was directed to two letters which defendant sent to plaintiff Loyd Wright (pursuant to the rider provision of the lease) on February 20, 1961, and November 27, 1963. In these letters defendant set forth the crop rent, calculated as it contends it should be calculated, namely, by deducting each year 10 percent of the cost of the well from the 20 percent crop rent figure, rather than from the total dollar amount of crops harvested. The two letters were attached as exhibits to the declaration of defendant's general manager, Donald Kent. Plaintiffs made no objection to either of these reports or to the manner in which crop rent was calculated.

In the affidavit of Loyd Wright, filed in opposition to the

motion for summary judgment on defendant's cross-complaint, Mr. Wright stated, "I did not analyze the statements for 1960 and 1962 which the defendant had furnished to me, and just accepted them at face value."

On May 22, 1964, Mr. Kent sent a letter to Mr. Wright in which he reported on the revenue received for the crops grown in 1963. He again computed the crop rent using the same formula. For the first time there was a balance of crop rent over cash rent, amounting to $443.04. Mr. Kent explained that defendant construed the lease to permit a carry-over of unused credit for previous years to offset this balance. On June 8, 1964, in a reply to this letter, plaintiffs first raised their objection to defendant's method of computation.

Agreeing with defendant's interpretation of the lease, the trial court declared in the summary judgment that the following formula should be used to calculate the crop rent due:

First, the crop rent for each year beginning with 1959 is to be computed by deducting $2,787.37 from 20 percent of the gross amount received for the crops.

Second, the cash rent is to be credited against any crop rent as computed under the above formula.

Third, if the full $2,787.37 is not "given or taken" in offsetting the crop rent for any one year, the uncredited portion is to be carried forward as a cumulative credit to be applied against crop rent payable in future years.

Fourth, if the entire $27,873.65 has not been credited against crop rent by the end of the 10-year term, the lessors (plaintiffs) are to pay the lessee (defendant) the amount that had not been credited.

The following principles are pertinent:

"A lease is a contract as well as a conveyance. [Citation.] Where doubt arises as to what the rights, duties and obligations of the parties are under the terms of a lease, the statutory rules for the construction of contracts are applicable. [Citation.]" (*Goodman* v. *Jonas*, 142 Cal.App.2d 775, 790 [299 P.2d 424].)

"In construing a contract the court should strive to ascertain its object as reflected in the provisions thereof; should be guided by the intention of the parties as disclosed by those provisions [citations]; should endeavor to effect the intention and object thus ascertained [citation]; should adopt that construction which will make the contract reasonable, fair and just [citations]; should give it such interpretation 'as will make it lawful, operative, definite, reasonable, and capable of

being carried into effect, if it can be done without violating the intention of the parties' [citation]; should avoid an interpretation which will make the contract unusual, extraordinary, harsh, unjust or inequitable [citations], or which would result in an absurdity [citations]; should reject language which is wholly inconsistent with its object [citations]; should consider the contract as a whole, using each clause thereof as a help to interpret the others [citation]; should give effect to every part thereof if reasonably practicable [citations] and, if this is impossible, to favor an 'interpretation which gives effect to the main apparent purpose of the contract' [citation]." (*Harris* v. *Klure,* 205 Cal.App.2d 574, 577-578 [23 Cal.Rptr. 313].)

▮ Initially, we find without merit defendant's contention that we may infer from plaintiff Wright's failure to question the method of computation used by defendant in its reports on the 1960 and 1962 crops, that plaintiffs believed defendant's interpretation was the correct one. As counsel for defendant conceded at the oral argument of this case, since this is an appeal from a summary judgment, Mr. Wright's statement in his affidavit that he did not analyze or read these reports, must be taken as true. Consequently, no inferences may be drawn from plaintiff's failure to complain when he received the two reports. As the parties' actions afford no basis for interpreting the disputed provisions of the lease, we must look solely to the wording of the lease to ascertain what was intended.

▮ The lease provides that the "cost" of the well would be "prorated over the ten-year period" and would be "fully amortized" at the termination of the 10-year term. But the lease also states that, "In calculating the crop rent, the cost of the well . . . will be . . . deducted from the gross amount of crop"; and, in the rider, provides that defendant furnish an annual statement showing the "gross amount of crops harvested . . . less the 10 percent (10%) amortization . . ."

In Webster's, Third New International Dictionary (Unabridged), the word "prorate" is defined, "to divide, distribute, or assess proportionately." The word "amortize," when used as an accounting term means, "to provide for the gradual extinguishment of an obligation."

If the provisions of the lease indicating that each year the given percentage of the cost of the well is to be "deducted from the gross amount of crop," is taken literally, the cost of the well is not being "amortized" or extinguished, for, at the

end of the 10-year term, defendant will have received only a 20 percent credit on the cost of the well, or 2 percent per year. If on the other hand defendant's formula (and that applied by the trial court without regard to the credit carry-over provisions) is used, since 10 percent of the well is deducted from the amount tentatively owed to plaintiffs, defendant is receiving full credit for the 10 percent in any year during the lease term in which the 20 percent crop rent was at least equal to the 10 percent.

Clearly, the wording of the lease is lacking in certainty as to what amount defendant is entitled to recover (in the form of credits on the rent due) on the cost of the fixture he built on the land. The language of the lease, however, plainly shows no intention that at the end of the 10-year term defendant would have received credit for only 20 percent of the cost of the well. Such a construction of the lease is negated by the provision stating, "If at the termination of the lease, the well and pumping equipment have not been fully amortized, the lessors will pay the lessee the difference of the cost less amortization."

We conclude that the only reasonable interpretation of the lease as to the manner in which the annual crop rent is to be computed, is the interpretation advocated by defendant and that found as the proper one by the trial court.

However, we do not find anything in the lease to indicate it was the intention of the parties that defendant was entitled to an annual credit carry-over; that, for each year of the lease term, if defendant did not get credit for the full 10 percent of the well cost, the amount not so credited would be accumulated and carried forward from year to year to apply on any future excess of crop rent over cash rent.

We believe the provision above quoted indicates an intention that only at the end of the lease term must plaintiffs reimburse defendant for the amount which has not been amortized or credited on any excess of crop rent over cash rent. At that time any part of the $27,873.65 amount expended by defendant in building the well, not recouped by defendant as a credit, will be due and payable to defendant.

Having concluded that defendant was not entitled under the lease to a yearly credit carry-over, but only on the termination of the lease was entitled to the cost not credited, on the basis of defendant's report of May 24, 1964, crop rent was due and owing to plaintiffs in 1963, in the amount of $443.04.

The judgment is modified by striking paragraphs 5 and 6 thereof, and substituting the following:

"5. Any part of the $27,873.65 total cost of the well and equipment which cannot be credited against excess crop rent due in any given year shall be accumulated and become due and payable to defendant upon the completion of the term of the lease.

"6. Plaintiffs shall recover from defendant on their complaint for rents due under the lease, the sum of $443.04, plus interest."

The judgment is affirmed in all other respects except as to the provision relating to costs. The case is remanded to the trial court solely for a redetermination of that question and of the question of entitlement to attorneys fees in the light of this opinion. Each party shall bear his own costs in this court.

Kingsley, J., concurred.

FILES, P. J.—I would reverse the judgment *in toto* because I can't agree that "deducted from the gross amount of crop" means "deducted from the rent."

The rent clause says that defendant shall pay 20 percent crop rent. Another clause says that the cost of the well shall be prorated over the 10-year period and "deducted from the gross amount of crop." No one claims to see anything ambiguous in this simple language. The difficulty arises with the clause which begins "If, at the termination of the lease, the well and pumping equipment have not been fully amortized, . . ."

The rationale of the decision is that (1) "amortize" means "pay"; (2) the use of the word "amortize" implies that plaintiffs will have paid defendant for the well by the end of the 10-year term; (3) the only sensible way for plaintiffs to pay for the well is to allow defendant to take it off the rent; (4) therefore when the parties said "deducted from the gross amount of crop" they meant "deducted from the rent."

The flaw in this reasoning is the first proposition. "Amortize" does not always mean "pay."[1] It also means write off

---

[1] The majority opinion quotes a portion of the definition of the word "amortize" in Webster's Third New International Dictionary. The full definition is: "1 *law*: to alienate in mortmain (*amortized* the estate) 2 *accounting* a: to provide for the gradual extinguishment of (an obligation, as a mortgage or bond issue) by payment of a part of the principal or by contribution to a sinking fund usu. with or at the time of each *periodic interest payment* b: to write down gradually to extinguishment the cost of (an asset) by periodic charges to expense or profit and loss— usu. applicable to intangible assets (as patents, bond premiums)"

the cost of an asset. A debt is amortized when it is paid, but an asset is amortized when the cost of it is written off as an expense. The latter meaning fits the context of this leasing arrangement. Each year of the 10-year term one-tenth of the defendant's investment would be written off and charged as an expense of producing the crop for that year.

If in any year the gross crop is less than the amount to be amortized (i.e., less than $2,787.37), plaintiffs agree to make an adjustment at the end of the term.

If we can accept this conventional accounting meaning of the word "amortized" then there is no ambiguity in the lease. We don't then have to say that "gross crop" is a synonym for "rent." The literal reading of the lease is, in my opinion, the proper one. Defendant should deduct $2,787.37 from the gross amount of the crop, and pay 20 percent of the remainder as rent.

The rider to the lease requires the lessee to furnish annually "a certified statement of the gross amount of crops harvested from said land, less the ten percent (10%) amortization. . . ." That computation is a wholly meaningless exercise if the lease is to be construed as the majority opinion declares.

A petition for a rehearing was denied May 8, 1967, and the judgment was modified to read as printed above. Files, J., was of the opinion that the petition should be granted. Appellants' petition for a hearing by the Supreme Court was denied June 7, 1967.