146 N.J. Super. 123 (1977)
369 A.2d 24
OTTO E. RIEMENSCHNEIDER, EXECUTOR OF THE ESTATE OF EMMA L. ZIMMERMAN, DECEASED, PLAINTIFF-RESPONDENT,
v.
FRITZ REUTER ALTENHEIM, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 1976.
Decided January 7, 1977.
*124 Before Judges FRITZ, CRAHAY and ARD.
Mr. Andrew F. Batistich argued the cause for appellant.
Mr. Charles F. Krause, III argued the cause for respondent (Messrs. Riemenschneider & Krause, attorneys).
The opinion of the court was delivered by CRAHAY, J.A.D.
This case presents the question of whether a home for the aged may retain a resident's payment under a life-care contract, when the resident died during a probationary period and the contract was silent as to that eventuality.
On August 8, 1974 Emma L. Zimmerman (Zimmerman), then 77 years old, completed and signed an "Application" for admission as a resident to the Fritz Reuter Altenheim, a nonprofit corporation operating a home for the aged. The form which was prepared by defendant constituted a written agreement between the parties. It generally provided that for a "donation" of $32,000 and an agreement that Zimmerman give her pension and Social Security payments to the home, less $45 a month, defendant would provide complete life care and burial. The contract contained the following provision agreed by the parties to be a probationary period:
I understand that if I desire to withdraw, or am expelled from the Home at any time during the first year of my stay, that I will have returned to me my entire donation, less however, the sum of $20.00 for each day I lived at the Home, or the sum of $1,000.00, whatever sum is greater * * *.
*125 The contract made no provisions for the disposition of the entrance fee if a resident died.
Two members of appellant's investigating committee testified that on November 21, 1974 a meeting was held with Zimmerman at which time she was told that her application would be accepted for a fee of $42,000. On the agreement $32,000 was crossed out and $42,000 inserted by a representative of the home. This increase was the result of a medical report of the applicant's health prepared after August 1974. At the November meeting Zimmerman objected to the increased payment because she wanted to leave money to certain relatives. She was told that her application could be withdrawn and she could live with relatives. Zimmerman allegedly then orally agreed to pay the additional amount. She did not initial the change or again sign the agreement. Testimony was presented that at the time Zimmerman inquired as to what would become of her money if she died. A member of the committee told her that if she died the day after she entered the home, the money would go to the home.
On December 3, 1974 Zimmerman executed a document entitled "Bill of Sale of Personal Property," transferring to defendant certain assets totaling $43,000 plus her monthly Social Security payments less $50. Zimmerman was not represented by legal counsel or others during these negotiations.
On January 11, 1975 Zimmerman entered the home and on January 27, 1975 she signed an "Addition to Application" wherein she designated that her funeral expenses would be paid by the home. Her cemetery deed was given to the home "if admitted as a resident." She died on January 30, 1975. During the three weeks in which she resided at the home she did not express any dissatisfaction with it or indicate any desire to withdraw. Likewise, at no time prior to her death did defendant consider expelling Zimmerman from the home.
This action was brought by Zimmerman's estate to recover from defendant the entrance fee paid less expenses. The trial judge found, after taking testimony and considering the applicable cases in the area, that plaintiff was entitled *126 to a return of the money paid over to the home, less certain deductions.
The principal question to be resolved is what was the intention of the parties as to this contingency in the absence of a contract provision.
Our courts have not directly passed on this issue. Generally, the validity or enforceability of life-care contracts has been upheld as not against public policy. Fidelity Union Trust Co. v. Reeves, 96 N.J. Eq. 490 (Ch. 1924), aff'd o.b. 98 N.J. Eq. 412 (E. & A. 1925); Annotation, "Validity and construction of contract under which applicant for admission to home for aged or infirm turns over his property to institution in return for lifetime care," 44 A.L.R.3d 1174 (1972). The majority of the decisions reaching the exact issue have determined that the money or property be returned to the estate. The basic reasoning is that in cases of doubt the contract should be construed most strongly against the home because it drew the contract. Secondly, the condition which would clearly establish that the transfer of property was intended to be absolute never occurred. First National Bank of Lawrence v. Methodist Home, 181 Kan. 100, 309 P.2d 389 (Sup. 1957); Brydges v. Home for the Aged, 373 Mich. 408, 129 N.W.2d 869 (Sup. Ct. 1964); Kirkpatrick Home for Childless Women v. Kenyon, 119 Misc. 349, 196 N.Y.S. 250 (Sup. Ct. 1922), aff'd 206 App. Div. 728, 199 N.Y.S. 851 (App. Div. 1923); Smith v. Eliza Jennings Home, 176 Ohio St. 351, 199 N.E.2d 733 (Sup. Ct. 1964); Lyons v. Willamette Lutheran Homes, Inc., 240 Or. 56, 399 P.2d 895 (Sup. Ct. 1965). Two reported decisions have reached a contrary result. Caldwell v. Basler, Inc., 225 Cal. App.2d 327, 37 Cal. Rptr. 307 (D. Ct. App. 1964); Dodge v. New Hampshire Centennial Home for Aged, 95 N.H. 472, 67 A.2d 10 (Sup. Ct. 1949).
We do not find it necessary to treat the issue of whether the trial judge properly entertained parol evidence in construing what the intentions of the parties was as to the agreement. If not ambiguous the agreement was clearly *127 silent on what would eventuate if the guest died during the probationary term. We are satisfied that where, as here, a written life-care contract allows for a probationary term during which either the guest or home may terminate the agreement, then absent any provisions for the contingency of the guest's death, sound public policy requires that such death within the probationary period will make operative the remitting provisions of the contract. We hold that under the circumstances reflected in this record a reasonable person would understand the contract as written to mean that until the one-year period of withdrawal had passed, the guest or guests' estate would be entitled to the entrance fee paid less the amount specified for expenses since neither party's promise had become absolute. Of course, if the contract provides for a disposition of assets in the event of death, then ordinarily its terms will govern. Bower v. The Estaugh, 146 N.J. Super. 116 (App. Div. 1977); First National Bank of Lawrence v. Methodist Home, supra, 181 Kan. at 106, 309 P.2d at 394; Smith v. Eliza Jennings Home, supra.
The judgment is affirmed.