[Civ. No. 52118. Second Dist., Div. Three. Apr. 27, 1978.]

Estate of WINIFRED W. O'DONNELL, Deceased.
KENNETH CORY, as State Controller, Petitioner and Appellant, v.
WILLIAM W. JENNEY, JR., as Executor, etc., et al.,
Objectors and Respondents.

## COUNSEL

Myron Siedorf, Margaret Groscup and Bettina A. Bate for Petitioner and Appellant.

Goodstein, Copes & Field, Wilson B. Copes and Robert E. Tout for Objectors and Respondents.

## OPINION

**COBEY, Acting P. J.**—Kenneth Cory, State Controller, appeals from an order fixing, after objections, the total inheritance tax payable by the

beneficiaries of the estate of Winifred W. O'Donnell, also known as Mrs. Thomas A. O'Donnell, as $58,042.36. The appeal lies. (Prob. Code, § 1240.)

The report of the inheritance tax appraiser set the tax due as $891,692.18. The trial court, however thereafter, sustained written objections, filed jointly by the executor of the estate of the above-named decedent and by the trustee of the Thomas A. O'Donnell trust, to this figure. The inheritance tax appraiser included as an *inter vivos* transfer, taxable under Revenue and Taxation Code, sections 13641 to 13648,[1] one-third of the trust property—the one-third being appraised at $6,152,371.88.

This case presents several questions regarding the taxability under our Inheritance Tax Law (§ 13301 et seq.) of the aforementioned one-third of the trust property over which the decedent, Winifred, held a power of appointment jointly with two others. The Controller contends in this court that this one-third is taxable under section 13696, either in its entirety or, at least, to the extent of $600,000 thereof. The objectors respond that the transactions before us are exempt under section 13697.[2] In our view neither of these positions is correct.

---

[1] All section references hereafter are to sections of the Revenue and Taxation Code unless otherwise indicated.

[2] Present section 13696, since it became effective on September 17, 1965 (see Stats. 1965, ch. 1070, § 6), has read in pertinent part as follows:

"If at the time of his death a decedent has a general power of appointment with respect to property, the exercise of the power is subject to this part [the Inheritance Tax Law] as a transfer of the property from the decedent to the person to whom the property is appointed and the decedent's failure to exercise the power is subject to this part [the Inheritance Tax Law] as a transfer of the property from the decedent to the person to whom the property passes by virtue of the nonexercise of the power."

In the trial court the Controller argued that the basis for the inclusion of the trust property in the decedent's taxable estate was section 13697. The first paragraph of this section, likewise effective on September 17, 1965, reads as follows:

"The exercise or release by the decedent during his lifetime of a power with respect to property which, but for such exercise or release would be subject to tax by virtue of the preceding section, is a transfer subject to this part [the Inheritance Tax Law] if the exercise or release is of such a nature that if it were a transfer of property owned by the decedent such transfer would be subject to this part [the Inheritance Tax Law] under Article 3 of Chapter 4 of this part [Inter Vivos Transfers §§ 13641-13648]. A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power."

## Facts[3]

The decedent herein, Winifred W. O'Donnell, died on January 24, 1969. She was the surviving spouse of Thomas A. O'Donnell, who died on or about February 21, 1945. By a declaration of trust, dated August 15, 1939, the said Thomas A. O'Donnell created the Thomas A. O'Donnell trust. He thereafter amended this declaration of trust on July 29, 1942, to create a joint power of appointment (exercisable only after his death) in the decedent, Winifred, and two daughters of Thomas by a prior marriage, under which the holders of the power could cause by unanimous written request the distribution to them in equal shares of all or any part of the principal of the trust estate. On or about February 21, 1945, the trust became irrevocable by reason of the aforementioned death of the trustor.

On May 20, 1949, the decedent, Winifred, and the others holding the aforementioned power of appointment, executed and thereafter promptly recorded a partial release of the aforementioned power of appointment in order to avoid the power being included in their gross estates for federal estate tax purposes. Under federal tax law this release was then tax-free. Under the release the holders of the power of appointment jointly relinquished the right of each of them to request the distribution to each of any part of the principal of the trust estate in excess of $30,000 "in any calendar year, per individual."

From May 20, 1949, the date of the execution of the partial release, to January 24, 1969, the date of Winifred's death, none of the parties to the release exercised the power of withdrawal reserved to them in the partial release.

At all material times the principal of the trust estate had a total value in excess of $1.8 million.

## Discussion

1. *The Taxability of the Inter Vivos Transfers of Property Subject to Winifred's Power of Appointment*

The power of appointment held jointly by Winifred and two others prior to her death in January 1969, was a general power of appointment

---

[3]In the trial court the parties to this litigation stipulated to the facts hereinafter set forth.

within the meaning of the Inheritance Tax Law both before and after the execution of the 1949 partial release thereof since the release merely put a monetary ceiling on the otherwise unrestricted power held jointly by Winifred and the two other holders to consume the trust property in its entirety if they so desired.[4] (See § 13692; *Estate of Nunn* (1974) 10 Cal.3d 799, 804, 807-808 [112 Cal.Rptr. 199, 518 P.2d 1151]; *Estate of Conroy* (1977) 67 Cal.App.3d 734, 738-739 [136 Cal.Rptr. 807]; *Estate of Morse* (1970) 9 Cal.App.3d 411, 415 [88 Cal.Rptr. 52].)

The *inter vivos* transfers of trust property effected in 1949 by the partial release of the general power of appointment was not taxable under section 13697 since that 1965 statute taxing releases of general powers of appointment is not retroactive in its effect. (See *Estate of Moore* (1972) 29 Cal.App.3d 481, 491 [105 Cal.Rptr. 568].)

Whether from 1965 on, the existence of Winifred's monetarily restricted power over the trust property had any inheritance tax consequences depends upon whether this power was cumulative or noncumulative. The Controller contends that the power to withdraw up to $90,000 a year jointly by the three holders of the power, including Winifred, was cumulative and, as previously noted, the trust property was therefore taxable at least to the extent of $600,000 (30,000 × 20) for the 20 years the power existed during Winifred's lifetime, that is from 1949 to 1969. This contention is based solely upon the fact that the power of withdrawal retained under the partial release was not labeled noncumulative. Neither, however, was it termed cumulative. In other words, its nature in this respect was not identified in the release.

The language of the release, though, points toward the conclusion that the release was intended to be noncumulative. We refer to the language which we have already partially quoted: "In excess of a total sum of Thirty Thousand Dollars ($30,000) *in any calendar year, per individual.*" (Italics added.) Furthermore, at least two accepted canons of construction suggest the same result. Releases are construed against releasers (see *Hayes v. Wetherbee* (1882) 60 Cal. 396, 399) and ambiguities in instruments are construed against those who cause them to exist—in this case, inferentially, the releasers. (See Civ. Code, § 1654; *Fox v. Aced*

[4] The 1949 monetary restriction, however, did assure that the trust property would not be exhausted through exercise of the general power of appointment. This property always exceeded $1.8 million in value. No probability of its exhaustion actually existed after 1949. (Cf. *Estate of Madison* (1945) 26 Cal.2d 453, 462-463 [159 P.2d 630].)

(1957) 49 Cal.2d 381, 384 [317 P.2d 608]; *Hellman* v. *Great American Ins. Co.* (1977) 66 Cal.App.3d 298, 303-304 [136 Cal.Rptr. 24].)

■ Properly construed then, Winifred and her two coholders of the general power of appointment could withdraw, following the execution of the release, not over $90,000 per year jointly ($30,000 apiece) of the trust property. When they failed to make any such withdrawals this power of withdrawal lapsed on an annual basis from 1965 forward. These annual lapses of this power would have been taxable under section 13697 except for the exemption from such taxation set out in the second and final paragraph of the section.[5] Since, according to the stipulated facts, the principal of the trust estate at all material times had a total value in excess of $1.8 million these annual lapses of $90,000 were entirely exempt from inheritance taxation.

2. *The Taxability of Winifred's Failure at Death to Exercise the Joint Power*

■ On the other hand, we believe and so hold that the failure of Winifred to exercise the power during the calendar year of her death (1969) was taxable to the extent of $30,000 under the aforementioned section 13696. The relevant portion of this statute reads: "If at the time of his death a decedent has a general power of appointment with respect to property . . . [t]he decedent's failure to exercise the power is subject to this part [the Inheritance Tax Law] as a transfer of the property from the decedent to the person[s] to whom the property passes by virtue of the nonexercise of the power."

At the time of her death Winifred had an unexercised joint power to require distribution of up to $30,000 to her during the calendar year 1969. Her failure to exercise this power at the time of her death resulted then in a transfer from her taxable under section 13696.

---

[5]This paragraph has always read since its enactment on September 17, 1965 (see Stats. 1965, ch. 1070, § 6, p. 2716) as follows:

"The lapse of a power of appointment during the life of the individual possessing the power shall be considered a release of such power. The preceding sentence shall apply with respect to the lapse of powers during any calendar year only to the extent that the property, which could have been appointed by exercise of such lapsed powers, exceeded in value, at the time of such lapse, the greater of the following amounts: (a) Five thousand dollars ($5,000), or (b) Five percent of the aggregate value, at the time of such lapse, of the assets out of which, or the proceeds of which, at the exercise of the lapsed powers could have been satisfied."

## DISPOSITION

The order fixing the inheritance tax is reversed for further proceedings consistent with the views expressed in this opinion. Each party to this appeal will bear his or her costs on appeal.

Allport, J., and Potter, J., concurred.