[Civ. No. 47464. First Dist., Div. One. Nov. 26, 1980.]

DRAYTON F. HOWE, JR., as Executor, etc.,
Plaintiff and Appellant, v.
AMERICAN BAPTIST HOMES OF THE WEST, INC.,
Defendant and Respondent.

**COUNSEL**

Peter L. Levy and Kaplan, Levy, Samrick & Bernard for Plaintiff and Appellant.

Hanson, Bridgett, Marcus, Milne & Vlahos, William J. Bush and Paul A. Gordon for Defendant and Respondent.

OPINION

NEWSOM, J.—Appellant is the executor for Mrs. Virginia W. Howe, deceased, and seeks reversal of a trial court's judgment which awarded respondent nursing home (hereinafter Home) an "accommodation fee," and all other fees, paid to respondent by Mrs. Howe pursuant to a lifetime care contract.

The case went to trial on stipulated facts which can be fairly summarized as follows: On November 30, 1977, Mrs. Howe, then age 71, signed a printed-form lifetime care contract provided by respondent Home. Pursuant to the terms of the contract, Mrs. Howe paid to respondent a nonrefundable processing fee of $150 and an accommodation fee of $7,400, specifically made refundable upon termination of the agreement by the Home or during a probation period.

The 90-day probationary period was specified in the contract, during which either party could elect to cancel the agreement. The contract further stated that "in the event of such termination" the accommodation fee could be refunded in accordance with the laws of the State of California, with the Home retaining an amount representing the pro rata cost for the period of occupancy. According to a separate provision of the agreement, the Home would retain the accommodation fee in the event of Mrs. Howe's death; however, this provision does not explicitly provide for distribution of the accommodation fee in the event of death during the probationary period.

The provisions of the contract at issue on appeal are those contained in section 13, which provides for termination as follows:

"13. TERMINATION OF AGREEMENT. This agreement shall be terminated as follows:

"a. PROBATIONARY PERIOD. There shall be a probationary period of ninety (90) days during which this agreement may be cancelled by either party. In the event of such termination, refund of the Accommodation Fee and any service fees shall be made in accordance with the laws of the State of California which provide in essence that CORPORATION retain the per capita cost of care for the period of occupancy by RESIDENT and remit the balance of any such payments made by the RESIDENT. The Processing Fee is non-refundable. . . .

"b. DEATH. Upon death of RESIDENT the Accommodation Fee paid by RESIDENT to CORPORATION shall remain with and become a gift to the CORPORATION and shall not be transferable by the Will of RESIDENT or subject to claim by his estate or heirs. All service fee payments shall be considered as payment for services rendered.

"c. BY RESIDENT. This agreement may be terminated at any time after the probationary period by one hundred twenty (120) days notice to the CORPORATION. . . .

"d. BY CORPORATION. CORPORATION may terminate this agreement at any time after the probationary period for good and sufficient cause with thirty (30) days written notice. . . ."

Mrs. Howe died during the probationary period, on January 13, 1978. Appellant claims that Mrs. Howe's death during the probationary period effected a cancellation requiring a rebate of the accommodation fee pursuant to subdivision (a). The Home insists that subdivision (b) governs distribution of the accommodation fee in the event of death during the probationary period.

Resolution of the issue requires interpretation of a contract which, as noted, is neither clear nor explicit. Our primary objective, of course, is to give effect to the intent of the parties. (*Sayble* v. *Feinman* (1978) 76 Cal.App.3d 509, 513 [142 Cal.Rptr. 895].) ■ The following well-settled principles of contractual interpretation to be employed in pursuing this objective were summarized in *County of Marin* v. *Assessment Appeals Bd.* (1976) 64 Cal.App.3d 319, 325 [134 Cal.Rptr. 349]: "[T]he contract must be construed as a whole and the intention of the parties must be ascertained from the consideration of the entire contract, not some isolated portion (Civ. Code, § 1641; *Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 760 . . .; *Stewart Title Co.* v. *Herbert* (1970) 6 Cal.App.3d 957, 963 . . .); a contract entered into for the mutual benefit of the parties is to be interpreted so as to give effect to the main purpose of the contract and not to defeat the mutual objectives of the parties (*Heidlebaugh* v. *Miller* (1954) 126 Cal.App.2d 35, 38 . . .; *Bradner* v. *Vasquez* (1951) 102 Cal.App.2d 338, 343-344 . . .); language which is inconsistent with the objective of the contract shall be rejected (Civ. Code, § 1653; *Jackson* v. *Puget Sound Lumber Co.* (1898) 123 Cal. 97, 100 . . .). Also, where a contract is susceptible of two interpretations, the courts shall give it such a construction as will make it lawful, operative, definite, reasonable and

capable of being carried into effect if it can be done without violating the intention of the parties (Civ. Code, §§ 1643, 3541; *Rodriguez v. Barnett* (1959) 52 Cal.2d 154, 160...; *Dix Box Co. v. Stone* (1966) 244 Cal.App.2d 69, 77...). And last, but not least, the court shall avoid an interpretation which will make a contract extraordinary, harsh, unjust, inequitable or which would result in absurdity (Civ. Code, § 1638; *Harris v. Klure* (1962) 205 Cal.App.2d 574, 578...; *Straus v. North Hollywood Hosp., Inc.* (1957) 150 Cal.App.2d 306, 311...; *Pacific Tel. & Tel. Co. v. City of Lodi* (1943) 58 Cal.App.2d 888, 892...)."

■ Upon consideration of the foregoing principles, we conclude that the contract must be construed as requiring a rebate of the unearned portion of the accommodation fee to appellant under section 13, subdivision (a). That section, when viewed as a whole, actually provides for termination by various means described in subdivisions (b) through (d) under the headings—"death," "by resident," and by "corporation," respectively—whereas subdivision (a) purports to prescribe *all* rules applicable to any termination during the probationary period.

The Home urges that the phrase "in the event of such termination" in subdivision (a) limits an accommodation fee refund to cases of termination by notice rather than by death. We do not take so restricted a view of subdivision (a). Instead, we construe it as applicable to any termination during the probationary period, including termination by death of the resident. Paramount among our reasons for that conclusion is the principle that "where one construction would make the contract unusual and extraordinary and another construction, equally consistent with the language employed, would make it reasonable, fair and just, the latter construction must prevail." (*Sayble v. Feinman, supra*, 76 Cal.App.3d 509, 513.) We must seek to avoid an interpretation which will make the contract harsh, unjust or inequitable. (Civ. Code, § 1638; *Wright v. Coberly-West Co.* (1967) 250 Cal.App.2d 31, 36 [58 Cal.Rptr. 213]; *Harris v. Klure* (1962) 205 Cal.App.2d 574, 578 [23 Cal.Rptr. 313].)

It would be both unreasonable and unfair to conclude that the Home should be allowed to retain an unearned fee in the absence of clear and explicit language creating that right. The agreement is far more equitable when construed as providing for a probationary period during which any termination, including death of the resident, results in a return of the accommodation fee to the resident's estate, with the Home retaining

only the amount representing the pro rata cost of care for the actual period of occupancy.

Such an interpretation appropriately compensates the Home in accordance with the reasonable expectations of the parties. It also recognizes that the agreement is in fact divisible; one part being immediately effective for temporary care during the probationary period, and another providing a contract in futuro for permanent support which comes into existence only after ratification by fulfillment of the conditions precedent that the resident chooses to remain and the Home chooses to have her. (*Farrand* v. *Redington Memorial Home* (Me. 1970) 270 A.2d 871, 873 [44 A.L.R.3d 1166].) Each such promise provides for reasonable compensation.

The result is also appropriate in light of the rule of interpretation which dictates that ambiguities in a contract be resolved against the drafting party, in this case the Home. (*Estate of O'Donnell* (1978) 80 Cal.App.3d 514, 519 [145 Cal.Rptr. 617]; *Spence* v. *Omnibus Industries* (1975) 44 Cal.App.3d 970, 974 [119 Cal.Rptr. 171]; *Yamanishi* v. *Bleily & Collishaw, Inc.* (1972) 29 Cal.App.3d 457, 463 [105 Cal.Rptr. 580].) ■ "While the interpretation of any document involves a determination of the intent of those who created it [citation], any uncertain language in an instrument will be interpreted against the one who caused the uncertainty to exist. (Civ. Code, § 1654)." (*Diamond Bar Dev. Corp.* v. *Superior Court* (1976) 60 Cal.App.3d 330, 334 [131 Cal.Rptr. 458].) ■ The Home, though it enjoyed a superior bargaining position and drafted the instrument, failed to explicitly and conspicuously provide for retention of the accommodation fee upon death of the resident during the probationary period. In the absence of such a clear provision, and in light of the wording of subdivision (a), liberally construed in favor of appellant, the agreement can only be interpreted as requiring a refund of the unearned portion of the accommodation fee to appellant.

Our review of decisions in other jurisdictions dealing with the issue at bench reveals that the majority view favors awarding a refund to the resident's estate when death occurs during the probationary period. In *Smith* v. *Eliza Jennings Home* (1964) 176 Ohio St. 351 [27 Ohio Ops. 2d 305, 199 N.E.2d 733], the court ordered the nursing home to refund a $3,000 fee following the death of the resident during the probation

period, despite a contractual provision analogous to section 13, subdivision (b) of the instant agreement.[1] The court reached its conclusion by employing the above-stated principles of contractual interpretation, and noted that, "Specifically, there is no express provision concerning disposition of the admission fee... in the event a resident dies during the probationary period,... Under such circumstances, the well-established rule that where there is doubt or ambiguity in the language of a contract it will be construed strictly against the party who prepared it is applicable." (*Id.*, at pp. 354-355.) A similar ruling, based upon similar facts, was made in *Farrand* v. *Redington Memorial Home, supra*, 270 A.2d 871, where the court ruled: "Defendant, having prepared the instrument, could easily have made the purpose clear. We adopt the majority rule as stated in *Smith, Adm'r.* and find that the conditions not having occurred which would have made the transfer of [the resident's] property to the Home and the Home's obligation to support [the resident] unequivocal the Plaintiff is entitled to a return of [the resident's] assets." (*Id.*, at p. 875.)

The remaining cases which adhere to the majority view involved contracts which concededly made the nursing home's position somewhat weaker because they did not contain "death" provisions. (Cf. *Riemenschneider* v. *Fritz Reuter Altenheim* (1977) 146 N.J.Super. 123 [369 A.2d 24]; *Brydges* v. *Home for The Aged* (1964) 373 Mich. 408 [129 N.W.2d 869, 870]; *Lyon* v. *Willamette Lutheran Homes, Inc.* (1965) 240 Ore. 56 [399 P.2d 895]; *First National Bank of Lawrence* v. *Methodist Home for the Aged* (1957) 181 Kan. 100 [309 P.2d 389]; *Old People's Home, etc.* v. *Miltner* (1939) 149 Kan. 847 [89 P.2d 874]; *Christenson* v. *Board of Charities* (1929) 253 Ill.App. 380, 384-385; *Kirkpatrick Home for Childless Women* v. *Kenyon* (1922) 119 Misc. 349 [196 N.Y.S. 250], affd. (1923) 206 App.Div. 728 [199 N.Y.S. 851]; *Evangelical Lutheran St. Stephan's Congregation* v. *Bishop* (1919) 213 Ill.App. 137.) These cases are nonetheless persuasive, not simply because of the factual similarity to the present case, but even more because of the reasoning employed. They stress two factors: (1) the guiding principles of contractual interpretation; and (2) the fact that a life care commitment never arose because of the death of the resident.

---

[1] The analogous "death" provision in *Smith* stated, "at my death such money and property [the accommodation fee] shall become the property of the Home to use as the Board of Trustees may direct." (*Id.*, p. 353.)

Illustrative is *First National Bank of Lawrence* v. *Methodist Home for the Aged, supra*, 181 Kan. 100 [309 P.2d 389], in which the agreement essentially provided that a $10,780 fee would be refunded if either party should decide to terminate within the two-month probationary period. In holding that the resident's death during the period was a termination requiring a refund of the fee, the court cited the aforementioned rules of interpretation, and citing those rules declared: "Again reviewing the contract in the light of the heretofore stated rules, and mindful that appellant, not the decedent, prepared the involved contract, we are impelled to the view that a reasonable person, in the position of the decedent at the time of the execution of the contract, would have understood the provisions of that instrument to mean that unless and until she attained the status of a life member in the appellant's home she, or her estate would be entitled to a return of the money paid by her for that right, less amounts specified in the agreement. Moreover we are convinced, that having prepared the contract, appellant's failure to make express provision therein for retaining the money paid by Bertha C. Ellsworth as a life membership fee, in the event of her death during the period of her probationary and/or trial membership status, precludes any construction of that agreement which would warrant its retention of such money upon the happening of that contingency." (*Id.*, 181 Kan. at p. 106.)

Similarly, in *Lyon* v. *Willamette Lutheran Homes, Inc., supra*, 240 Ore. 56 [399 P.2d 895], the resident, Anna Bennett, died within the probationary period. The court ordered a refund of the $5,000 fee to the resident's successors upon the rationale that the life fee contract upon which the accommodation fee depended never bound the parties because of the death of the resident during the probationary period. The court explained: "This court believes the money should be returned. It would appear to us that the second reason stated above for its return is the principal reason why plaintiff in this case should recover. The bargain was that plaintiff would pay $5,000 for defendant's unequivocal promise to give her living accommodations and care for life at a stipulated monthly fee. At the time Mrs. Bennett died the condition had not yet occurred upon which defendant's promise was to become unequivocal. The contract she signed specified the giving of such promise was to be held in abeyance until she had been a resident of the home for the three-month probationary period. Her death made it impossible for this type of promise to be given to her. She did not receive, prior to her death, that for which she paid the fee, i.e., defendant's unconditional promise to give her living accommodations and support for her life. Her

estate is entitled to the return of her money." (*Id.*, 240 Ore. at p. 59.)[2]

We are aware of but disagree with the few cases which reach a contrary conclusion. (See *Dodge* v. *New Hampshire Centennial Home for Aged* (1949) 95 N.H. 472 [67 A.2d 10, 10 A.L.R.2d 858].)[3] The only California case dealing with this issue, *Caldwell* v. *Basler, Inc.* (1964) 225 Cal.App.2d 327 [37 Cal.Rptr. 307], we find distinguishable and unpersuasive at least in its analysis. In *Caldwell*, the resident had been a month-to-month tenant, and subsequently entered into a life care contract with the home which provided for a refund of the accommodation fee if either party terminated the agreement within 90 days. (*Id.*, at p. 328.) The court distinguished *First National Bank of Lawrence* v. *Methodist Home for the Aged, supra*, 181 Kan. 100 [309 P.2d 389], based upon a finding that the deceased resident had never been a probationary member. (*Id.*, at p. 329.)

We find, contrary to *Caldwell*, that Mrs. Howe entered into an agreement which made her a probationary resident receiving temporary care until the probationary period lapsed. During that period, the estate of Mrs. Howe was entitled to return of the unearned portion of the accommodation fee in the event of the resident's death, which resulted in an automatic termination of the probationary agreement pursuant to section 13, subdivision (a). Only at the conclusion of the probationary period would the resident have become a life care member thereby ratifying and making applicable the life care provisions of the agreement, including subdivision (b) of section 13.[4]

Finally, respondent Home has cited a number of administrative nursing home regulations which, it argues, compel a contrary ruling. None

---

[2]A similar discussion is found in *Brydges* v. *Home for The Aged, supra*, 373 Mich. 408, at pages 412-414.

[3]In *Dodge*, the court seemed to base its decision on the rationale that the interest of the decedent resident's legatees was less compelling than the interest of the nursing home, which could use the fee to care for other residents. This conclusion, we feel, ignores the applicable principles of contractual interpretation and the reasonable expectation of the parties.

[4]*Gold* v. *Salem Lutheran Home Assn.* (1959) 53 Cal.2d 289 [1 Cal.Rptr. 343, 347 P.2d 687], is also not dispositive here. In *Gold*, no probationary period was involved; the agreement imposed upon the home a clear noncontingent obligation to provide life care. (*Id.*, at p. 290.)

of the cited regulations, however, mandates retention of the "accommodation fee" in the face of the express contractual provisions here being construed. (See Cal. Admin. Code, tit. 22, § 84001 et seq.) In fact, section 84321 of title 22 of the California Administrative Code appears to support a position contrary to respondent's by providing that, while retention may be agreed upon, "the agreement *shall* clearly specify the effective policy upon the death of the resident." (Italics added.)

■ Only California Administrative Code, title 22, section 84303 is pertinent to this appeal. Section 84303 states in pertinent part: "If the resident is accepted by the facility at the time the agreement is executed, the facility is permitted to retain the accommodation fee and the continuing care fee in the event of death of the member during the probationary or trial period. At some point in the contract, a statement similar to the following would be required to support this action. 'Upon the death of resident, all accommodation fees and all funds deposited for the continuing care agreement of resident shall remain the property of the corporation.'"

However, neither the recitation in section 84303 nor section 13, subdivision (b) of the agreement clearly directs retention in the event of the resident's death during the probationary period. Section 84303 suggests permissible language to achieve that result, but nothing therein compels its inclusion in contracts, or gives it precedence over conflicting language in such contracts. Moreover, we find respondent's argument under section 84303 unpersuasive, because that section is in spirit contrary to the enabling legislation, of which it forms a part—especially in light of section 1781 of the Health and Safety Code, which, in pertinent part, grants rule making authority to the state Department of Social Services as follows: "The state department shall make such rules and regulations as it deems best for the government of any institution or organization specified in Section 1770 in order *that the rights of aged persons may be protected.* These rules and regulations shall include provisions which require entrance fees for a prepaid life care contract, however denominated, to be properly applied for the purpose of providing services pursuant to a life care contract." (Italics added.) Neither section 84303 nor respondent's proposed construction of the agreement advances or comports with the legislative purpose stated in section 1770 under these circumstances. Instead they would reward the use of imprecise contractual language promotive of inequitable agreements under which—without benefit to aged persons—compensation would be unrelated to the life care services rendered.

We reverse and remand to the trial court with directions to refund the accommodation fee to appellant, less the reasonable cost of care during the period of occupancy, such cost to be determined by the trial court.

Elkington, Acting P. J., and Grodin, J., concurred.